

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED    AUG 1 1 2006

LORETTA G. WHYTE
CLERK

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**SAL CIOLINO AND ASSOCIATES**                                    **CIVIL ACTION**

**VERSUS**                                                        **NO. 04-3360 C/W**
                                                                  **05-0251 &**
                                                                  **05-0252**

**FIRST EXTENDED SERVICE**                                        **SECTION "C"**
**CORPORATION, PREMIER**
**AUTOMOTIVE, LLC. D/B/A/ TOYOTA**
**OF NEW ORLEANS AND TROY J. DUHON**

 

Before the Court is a Motion for Summary Judgment brought by defendant, First Extended Service Corporation. The Court, having studied the Court record, the law and applicable jurisprudence, and the legal memorandum submitted by the parties, is now fully advised in the premises and ready to rule.

**ORDER AND REASONS**

**I. BACKGROUND**

The business relationship between SCA and First Extended Service Corporation ("FESC") began in 1993, when SCA entered into a "Representative Agreement" with FESC (the "1993 Agreement"). The 1993 Agreement provided that SCA would act as FESC's sales representative in Louisiana and Mississippi, and would solicit automobile dealers to enroll customers in extended service agreements administered by FESC. Under the 1993 Agreement, SCA was to receive a commission for every service agreement enrolled with FESC from the dealers solicited by SCA.

On or about July 4, 1996, SCA and FESC entered into a second "Representative Agreement"

1

(the "1996 Agreement"). The 1996 Agreement contained several of the same provisions as the 1993 Agreement. Specifically, the 1996 Agreement contained the following language: "This appointment is not exclusive. First Extended reserves the right to appoint other representatives in the same states or territories. First Extended also has the right to change territories and take any other actions it deems appropriate to further its business."

In addition, the 1996 Agreement stated, "[t]his is the complete Agreement between First Extended and Representatives, replaces all prior agreements in their entirety and may not be amended except in writing and signed by an authorized officer of First Extended." Because of this language, the 1996 Agreement is the controlling document that governs the relationship between FESC and SCA. Finally, the 1996 Agreement contains a forum selection clause which provides that the Agreement is governed by the law of the State of Texas.

From 1997 to 2003, SCA made numerous sales calls on Troy Duhon, the President of Premier Automotive, LLC, d/b/a/ Toyota of New Orleans ("Premier"). SCA did not enroll Premier into any of FESC's services.

In 2001, Patrick Donahue, the President and CEO of FESC, met Troy Duhon through a high school classmate of Duhon's, who was also an employee of Mr. Donahue's. At the time, Mr. Donahue was working for Resource Dealer Group, which was and is the sister company of FESC, and provides financial services and products to automobile dealerships throughout the United States. In 2001, Donahue discussed with Duhon the possibility of an arrangement between Premier and Resource Dealer Group. Duhon could not enter into an agreement with Resource Dealer Group at that time because of a contractual relationship with another provider of financial services and products.

2

Donahue began managing FESC in 2002.  At that time, Donahue and Duhon continued to discuss a business relationship, this time between FESC and Premier.  On December 22, 2003, Premier and FESC entered into an agreement whereby Premier agreed to purchase warranty and financial services from FESC, and FESC agreed to provide a substantial loan incentive against future production to Premier.

Plaintiff demanded compensation for contract in light of its prior work for FESC, and for FESC's success in forming an agreement with Premier.

## II.  LAW AND ANALYSIS OF THE COURT

### A.  Standard of Review

The Federal Rules of Civil Procedure provide that summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  *Stults v. Conoco, Inc.*, 76 F.3d 651, 655-56 (5th Cir. 1996) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)), *cert. denied*, 506 U.S. 832 (1992)).  When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.  The nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial*."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986) (emphasis supplied); *Tubacex, Inc. v. M/V RISAN*, 45 F.3d 951, 954 (5th Cir. 1995).

Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 588. Finally, the Court notes that substantive law determines the materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## B. Breach of Contract Claim

"In construing a contract, we must ascertain and give effect to the parties' intentions as expressed in the document." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003); *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2000). "We must consider the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing the provisions with reference to the whole agreement." *Webster*, 128 S.W.3d at 229. "We construe contracts 'from a utilitarian standpoint bearing in mind the particular business activity sought to be served' and 'will avoid when possible and proper a construction which is unreasonable, inequitable and oppressive.'" *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987). "If, after the pertinent rules of construction are applied, the contract can be given a definite or certain legal meaning, it is unambiguous and we construe it as a matter of law." *Webster*, 128 S.W.3d at 229. "On the other hand, a contract is ambiguous if it susceptible to more than one reasonable interpretation." *Id.*

A contract is not ambiguous because the parties disagree about its meaning. *REO Industries, Inc. v. Natural Gas Pipeline Co.*, 932 F.2d 447, 453 (5th Cir. 1991). Under Texas law, a contract is ambiguous only when the application of pertinent rules of construction leave it genuinely uncertain

which one of two reasonable meanings is the proper one. *Temple-Inland Forest Prods Corp. v. United States*, 988 F.2d 1418, 1421 (5th Cir. 1993) (*quoting Prairie Producing Co. v. Schlacter*, 786 S.W.2d 409, 413 (Tex. App.-Texarkana 1990, writ denied).

In the present case, both parties agree that the contract in dispute is clear and unambiguous. However, both parties disagree about the meaning of the contract.

The object of the contract was to authorize plaintiff to act on behalf of defendant as a non-exclusive sales representative to automobile dealerships in Louisiana and Mississippi. Paragraph 1 of the Agreement states that:

> This appointment is non-exclusive. First Extended reserves the right to appoint other representatives in the same states or territories. First Extended also has the right to change territories and take any other actions it deems appropriate to further its business.

See Ex. "B" to FESC's original Memorandum in Support.

The Agreement is susceptible to more than one reasonable interpretation, and it is generally uncertain as to which of the two interpretations is the proper one.

The Agreement explicitly reserves FESC's right to appoint other representatives, and does not grant SCA an exclusive right to sell. But it is reasonable for SCA to expect that it would not have to compete against FESC under the language of this Agreement. The Agreement creates a fact question regarding FESC's intent, because the Agreement is silent concerning the right claimed by FESC to enter into its own agreements with dealers, without going through a sales representative.

The Agreement governed the relationship between SCA and FESC from 1993 to 2003, and from the course of dealing between the parties, the contract can be interpreted to provide SCA's construction as reasonably as FESC's.

5

FESC's reservation of their right to "take any other actions it deems appropriate to further its business" does not have a controlling effect. "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Myers v. Gulf Coast Minerals Mgmt Corp.*, 361 S.W.2d 193, 196 (Tex. 1962); *Citizens Nat'l Bank v. Tex. & P. Ry. Co.*, 136 Tex. 333, 150 S.W.2d 1003, 1006 (1941).

When considering all the provisions of the Agreement together with the parties' usage of trade, the Agreement cannot be given a definite and certain legal meaning and is therefore ambiguous. Therefore, defendant's Motion for Summary Judgment concerning the issue of breach of contract is DENIED.

## C. Unfair Trade Practices Claim

"To have standing to sue under Louisiana Unfair Trade Practices and Consumer Protection Law, a plaintiff must demonstrate that they are consumers or business competitors." *Tessier v. Moffat*, 93 F. Supp.2d 729 (E.D. La. 1998). "Plaintiffs cannot bring claim, under Louisiana Unfair Trade Practices and Consumer Protection Law, unless they are in fact either consumers or business competitors of defendant." LA. REV. STAT. § 51:1401.

A sales representative who worked for the defendant, who neither claimed nor brought evidence indicating intent to establish a competitive enterprise, does not have business competitor standing under LUTPA. *W.A. Offshore Equipment Company v. Parmatic Filter Corp.*, 767 F.Supp. 125 (E.D. La. 1991).

In this case, SCA does complain that FESC directly entered into a contract with one of SCA's sales prospects, breaching the Agreement. But plaintiff is not, and never was, in competition with defendant. Plaintiff was defendant's alleged sales representative, selling products for the defendant.

6

There is no claim and no evidence that plaintiff sought to establish its own business selling extended warranty services in competition with FESC. Instead, plaintiff was working for FESC and seeks damages for defendant's violation of the Representative Agreement between the two. While defendant's actions may arguably be a breach of contract, plaintiff cannot seek protection under LUTPA by alleging that defendant sold its own products. Therefore, plaintiff does not have standing to bring claim against defendants under LUTPA. Therefore, defendant's Motion for Summary Judgment concerning the issue of unfair trade practices is GRANTED.

**D.  Unjust Enrichment**

The five requirements for establishing a claim of unjust enrichment, are: (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment, and (5) there must be no other remedy at law available to the plaintiff. *Finova Capital Corp. v. IT Corp.*, No. 33,994 (La. App. 2 Cir. 12/15/00), 774 So.2d 1129, 1132.

The unjust enrichment remedy is unavailable because plaintiff has pleaded an alternative remedy at law, breach of contract. That contract claim, not the Louisiana doctrine of unjust enrichment, governs the propriety of SCA's recovery. Therefore, defendant's Motion for Summary Judgment concerning the issue of unjust enrichment is GRANTED.

**E.  Violation of Louisiana Antitrust Statute/Detrimental Reliance Claim**

Defendant moves for summary judgment on two issues originally raised in plaintiff's Petition: (1) violation of Louisiana Antitrust Statute, and (2) Detrimental Reliance claim. Plaintiff chose not to argue in support of these issues in its opposition to defendant's motion for summary

judgment. Therefore, defendant's Motion for Summary Judgment concerning the issues of violation of Louisiana Antitrust Statute and detrimental reliance is GRANTED.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment, filed on behalf of the defendant, is hereby **DENIED IN PART, AND GRANTED IN PART.**

New Orleans, Louisiana, this 10 day of _____Aug_____, 2006.

_____
**HELEN G. BERRIGAN
UNITED STATES DISTRICT COURT JUDGE**